**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>EDWARD NEGRETE, JR.<br><br>           Debtor.<br>_____<br>EDWARD NEGRETE, JR.,<br><br>           Appellant,<br><br>v.<br><br>CITIZENS STATE BANK,<br><br>           Appellee.<br>_____ | BAP No.   CC-13-1557-PaKiTa<br><br>Bankr. No.   13-10036-RN<br><br><br>**M E M O R A N D U M**[1] |

Submitted Without Oral Argument[2]
on July 25, 2014

Filed - August 7, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Richard M. Neiter, Bankruptcy Judge, Presiding

_____

Appearances:   Edward Negrete, Jr., on brief, pro se.

_____

Before: PAPPAS, KIRSCHER AND TAYLOR, Bankruptcy Judges.

_____

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]   In an order entered April 4, 2014, the Panel unanimously determined that this appeal is suitable for submission without oral argument.  Fed. R. Bankr. P. 8012; Ninth Circuit BAP R. 8012-1.

Chapter 7[3] debtor Edward Negrete, Jr. ("Debtor") appeals the bankruptcy court's order denying his motion for reconsideration of an order denying his motion for contempt. We AFFIRM.

**FACTS**

At the center of this appeal are proceeds from the sale of a single family home located on a residential lot in Riverside County, California (the "Property"). Debtor's mother transferred title to the Property to her eight children as tenants in common in 2006.

On October 3, 2011, a state court judgment was entered against Debtor in favor of Citizens State Bank ("Creditor") for $231,373.65 ("Judgment"). Creditor recorded an Abstract of the Judgment in Riverside County, and thereby obtained a judgment lien against the Property. Cal. Code Civ. Proc. § 697.310(a). The Property was also encumbered by a consensual lien in favor of Wells Fargo Bank which, as of September 9, 2012, had a balance of $4,035.82.

On January 2, 2013, Debtor filed a chapter 7 petition. In his schedules, Debtor listed his interest in the Property on schedule A, and claimed it exempt in the amount of $20,815.87 on schedule C pursuant to California's "wildcard" exemption, Cal. Civ. Proc. Code § 703.140(b)(5). He also listed the Judgment as a secured claim on schedule D, and in his Statement of Intention,

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

-2-

Debtor advised that it was his intent to avoid Creditor's judgment lien.

On February 19, 2013, Debtor, acting pro so, filed his first motion seeking to avoid Creditor's judgment lien on the Property, which motion was denied by the bankruptcy court for "[f]ailure to serve authorized agent of Wells Fargo Bank and the lienholders. Failure to submit reliable evidence of Fair Market Value of property." Order on Motion to Avoid Lien at 2, March 18, 2013. Debtor filed another motion to avoid Creditor's judgment lien on the Property on April 9, 2013. This second motion was also denied by the bankruptcy court due to "insufficient and inadmissible evidence of fair market value of property." Order on Motion to Avoid Lien at 2, April 25, 2013.

In May 2013, four of the Property owners commenced an action in California state court against Debtor and the three other owners for partition and for an accounting, seeking to have the Property sold and the proceeds distributed among the eight owners. The Property was listed for sale by July 2013.

On July 10, 2013, Debtor filed a third motion seeking to avoid Creditor's judgment lien, this time accompanied by evidence concerning the Property's fair market value. The bankruptcy court entered an order on August 8, 2013, granting the motion, but only in part (the "Partial Avoidance Order"). This Partial Avoidance Order avoided Creditor's judgment lien on the Property, but only to the extent of $96,225.52.[4] The following

---

[4] This amount was determined by the bankruptcy court presumably as the result of erroneously attributing sole

continue...

-3-

day, August 9, 2013, Debtor filed an ex parte application to reconsider the Partial Avoidance Order; it was granted by the bankruptcy court in an order entered on September 4, 2013 (the "Total Avoidance Order"). The Total Avoidance Order avoided Creditor's judgment lien on the Property in its entirety, and declared it void and unenforceable.

In the meantime, however, a sale of the Property had been negotiated. In anticipation of this sale, on August 12, 2013, after entry of the Partial Avoidance Order, but prior to entry of the Total Avoidance Order, Creditor's counsel contacted the escrow officer handling the closing of the sale of the Property and offered to release its judgment lien in exchange for payment of Debtor's share of the net proceeds of the sale. The following day, on August 12, 2013, Debtor recorded the bankruptcy court's order granting him a discharge, as well as the Partial Avoidance Order, in Riverside County.

On August 19, 2013, the sale of the Property closed, and Debtor informed Creditor's counsel of the existence of the bankruptcy discharge as well as the Partial Avoidance Order. Despite this, according to the closing statement, Debtor's siblings each received their respective share of the sale proceeds, but Debtor's portion, $19,461.54, was disbursed by the escrow company to Creditor's counsel on August 20, 2013.

On August 22, 2013, Debtor sent a written demand to Creditor's counsel seeking payment of the sale proceeds because

_____

[4]...continue
ownership of the Property to Debtor, rather than the one-eighth interest he actually held.

-4-

Creditor's judgment lien had been avoided by the bankruptcy court and because the sale proceeds were exempt. Creditor did not return the proceeds to Debtor, and on September 4, 2013, Debtor filed a motion in the bankruptcy court seeking an order holding Creditor in contempt. On October 4, 2013, the bankruptcy court entered an order denying the motion for contempt:

> The Court, having reviewed the pleadings and related docket, and finding that (i) the amended order entered on September 4, 2013 ("Amended Order") avoiding the Citizens State Bank lien in its entirety was not entered until after Citizens State Bank (the "Creditor") had already legally collected the proceeds from the sale of the subject property; (ii) there was no evidence to demonstrate that the Creditor willfully violated a direct order of the Court in retaining the funds; and (iii) the Debtor has other means available to him outside of the bankruptcy process in order to collect the funds from the Creditor . . . IT IS HEREBY ORDERED that Debtor's Motion is DENIED.

Order Denying Debtor's Motion for Contempt at 1, October 4, 2013. ("Order Denying Contempt").

Debtor requested that the bankruptcy court reconsider the Order Denying Contempt in a motion filed October 10, 2013. The motion was set for hearing on November 6, 2013, and the day before the hearing, the bankruptcy court issued a tentative ruling denying the motion. Neither of the parties appeared at the scheduled hearing and, on November 27, 2013, the bankruptcy court entered an order adopting its tentative ruling and denying the motion ("Order Denying Reconsideration") because, the court explained:

> [T]he First Order Avoiding Lien only partially avoided Creditor's lien. Creditor collected Debtor's 1/8

-5-

interest in the Property, or $19,480.94[5], which was within the un-avoided amount under the First Order Avoiding Lien. The Amended Order had not yet been entered. As such, taking into consideration this fact, which the Court did take into consideration when deciding the Motion for Contempt, there was no violation of a Court order. . . . The Court found that Creditor did not wilfully violate a Court order when it obtained the sales proceeds for the reasons explained above. In addition, the Court found that Creditor did not willfully violate a Court order to turn over the sale proceeds. Debtor provides no evidence showing that Creditor willfully disregarded a Court Order. . . . Debtor has not shown by clear and convincing evidence that Creditor violated a specific and definite Order of the Court either in collecting the sale proceeds or in retaining them.

Order Denying Reconsideration at 2, November 27, 2013.

Debtor filed a timely appeal of the Order Denying Reconsideration.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES[6]

Whether the bankruptcy court abused its discretion when it denied Debtor's motion for contempt?

---

[5] The closing statement indicated that $19,461.54 was disbursed to Creditor's counsel. Any difference in this amount is immaterial.

[6] Although Debtor's notice of appeal indicates that he appeals only the denial of his motion to reconsider, the arguments in his briefing also reiterate the arguments made in favor of his contempt motion. Because Debtor appears pro se, we have exercised our discretion and construe his papers liberally. Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006). Accordingly, we consider both the Order Denying Contempt as well as the Order Denying Reconsideration to be within the scope of this appeal.

-6-

Whether the bankruptcy court abused its discretion when it denied Debtor's motion to reconsider the denial of the motion for contempt?

## STANDARDS OF REVIEW

We review the bankruptcy court's denial of the motion for contempt for abuse of discretion. Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth., 564 F.3d 1115, 1119 (9th Cir. 2009); Rosales v. Wallace (In re Wallace), 490 B.R. 898, 904-05 (9th Cir. BAP 2013). We also review the denial of the motion for reconsideration for abuse of discretion. Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc., 610 F.3d 1063, 1066 (9th Cir. 2010); Collect Access LLC v. Hernandez (In re Hernandez), 483 B.R. 713, 719 (9th Cir. BAP 2012). Moreover, we review a bankruptcy court's interpretation of its own order for abuse of discretion. In re Wallace, 490 B.R. at 905.

The abuse of discretion standard has two parts. First, we consider whether the bankruptcy court applied the correct legal standard; and second, we decide whether the court's factual findings supporting the legal analysis were clearly erroneous. Alakozai v. Citizens Equity First Credit Union (In re Alakozai), 499 B.R. 698 (9th Cir. BAP 2013) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

### I. The Contempt Motion

Debtor's contempt motion is premised on his argument that Creditor was not entitled to payment of Debtor's portion of the Property sale proceeds because Creditor's lien had been avoided, at least in part, and because the discharge order prohibited

-7-

Creditor from enforcing what was now an unsecured Judgment. The bankruptcy court denied Debtor's contempt motion, reasoning that, at the time Creditor received the sale proceeds, only the Partial Avoidance Order had been entered and that order left a portion of Creditor's judgment lien intact. Thus, the court ruled, because it held a secured claim, collection of the sale proceeds by Creditor was not prohibited by the discharge order. Moreover, the bankruptcy court concluded, Creditor's retention of the funds was not a willful violation of any order of the court. Finally, the bankruptcy court noted that if Debtor were entitled to recover the funds paid to Creditor, he could seek that relief in a forum other than the bankruptcy court and through a motion other than one based on contempt.

Debtor's motion for reconsideration was based on what Debtor alleged was newly discovered evidence and manifest injustice resulting from the Order Denying Contempt. Because the bankruptcy court erred in calculating the extent that Creditor's judgment lien should be avoided when it entered the Partial Avoidance Order, but later corrected that mistake in the Total Avoidance Order, Debtor contended that it would be manifestly unjust to permit Creditor to rely upon the incorrect order to obtain payment of the funds, or to allow Creditor to retain those funds once the error was corrected by the bankruptcy court's entry of the Total Avoidance Order.

The bankruptcy court denied Debtor's motion for reconsideration, holding that since Creditor still held a partial judgment lien when it obtained Debtor's portion of the sale proceeds, Creditor did not violate any order in place at the

-8-

time. The court again noted there were other avenues by which Debtor could pursue Creditor for the funds.

Debtor's motion for contempt was founded on § 105(a), which provides that the bankruptcy court:

> may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking an action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

To hold a party in civil contempt, "the bankruptcy court must find by clear and convincing evidence that the offending party knowingly violated a definite and specific court order." Knupfer v. Lindblad (In re Dyer), 322 F.3d 1178, 1190 (9th Cir. 2003); Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002). Following such showing, the burden shifts to the alleged contemnor to show why it was unable to comply with the order. In re Bennett, 298 F.3d at 1069; FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999). A court has wide latitude in determining whether there has been contemptuous defiance of its order. Gifford v. Heckler, 741 F.2d 263, 266 (9th Cir. 1984) (citing Neebars, Inc. v. Long Bar Grinding, Inc., 438 F.2d 47, 48 (9th Cir. 1971)).

Civil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite. Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 465 (9th Cir. 1989) (citing Gifford, 741 F.2d at 265). Thus, to support a contempt motion, the order alleged to have been disobeyed must be sufficiently specific. In re Dual-Deck Video Cassette Recorder

-9-

Antitrust Litig., 10 F.3d at 695 (citing Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n, 389 U.S. 64, 76 (1967)).

We conclude the Partial Avoidance Order was sufficiently specific and definite to avoid a portion of Creditor's lien. Although it was a form order in which the bankruptcy court checked boxes and filled in blanks, it clearly declared in a handwritten notation by the bankruptcy court that Creditor's lien was avoided "in part" in the amount of "$96,225.57".

However, the Partial Avoidance Order was neither specific nor definite regarding how any proceeds should be disbursed in the event the Property subject to Creditor's judgment lien was sold. The Partial Avoidance Order also made no reference to either the amount of Debtor's claim of exemption in any sale proceeds, or whether any amount remained above the exemption which Creditor could seize and apply to the unavoided portion of its judgment lien. In short, because nothing in the Partial Avoidance Order — the only order in effect as of the date Creditor was paid — specifically dictated what was to be done with the sale proceeds, Creditor's actions in directing the escrow company to disburse those funds to Creditor did not run afoul of its terms. See In re Dorado Marine, Inc., 343 B.R. 711, 713 (Bankr. M.D. Fla. 2006) ("The Opinion and Final Judgment merely establish Kollenbaum's right to an equitable lien; they do not specifically direct Lickert or the Debtor to pay any net proceeds of the sale to Kollenbaum," and thus will not support a finding of contempt); see also Mueller v. Hall (In re Parker), 368 B.R. 86 (6th Cir. BAP 2007) (a sale order that approved the

-10-

trustee's sale of the debtor's interest in an ongoing lawsuit but did not require debtor or his counsel to perform or refrain from performing any particular acts was not specific enough to support an order of contempt when debtor's counsel continued to prosecute the lawsuit).

Simply stated, a party cannot be in contempt of an order that does not yet exist. The bankruptcy court did not abuse its discretion when it determined that Creditor had not violated any specific order and, therefore, denied Debtor's motion for contempt.

## II. The Reconsideration Motion

Debtor sought reconsideration of the Order Denying Contempt under Civil Rule 59(e), made applicable in bankruptcy cases by Rule 9023. The case law explains that reconsideration under Civil Rule 59(e) is appropriate where the movant establishes the existence of any one of three conditions:

> To establish that the bankruptcy court abused its discretion in denying the motions for reconsideration, [the movant] must demonstrate the existence of newly discovered evidence that was not available at the time of the original hearing, or that the bankruptcy court committed clear error or made a decision that was manifestly unjust, or that there was an intervening change in controlling law.

Marciano v. Fahs (In re Marciano), 459 B.R. 27, 51 (9th Cir. BAP 2011) (citing Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001)).

Debtor argues that because the Total Avoidance Order was entered after Debtor filed the motion for contempt, it constituted "newly discovered evidence" sufficient to require reconsideration by the bankruptcy court of the Order Denying

-11-

Contempt. We disagree.

In its ruling concerning Debtor's motion for contempt, the bankruptcy court explicitly considered the timing and effect of the Total Avoidance Order, but correctly determined that, at the time Creditor was paid, its judgment lien had only been partially avoided. Because the bankruptcy court considered the Total Avoidance Order at the time it made its decision concerning the motion for contempt, it cannot be characterized as newly discovered evidence to support reconsideration of the Order Denying Contempt. That the bankruptcy court entered the Total Avoidance Order completely avoiding Creditor's judgment did not alter the fact that, at the time Creditor was paid Debtor's portion of the sale proceeds, Creditor still held a partially valid judgment lien on the Property.

Debtor also contends that there was a "manifest failure by the [bankruptcy court] to consider material facts and dispositive legal arguments which were presented to the Court before the entry of the Order Denying Debtor's Motion For Contempt." By this contention, we assume Debtor is arguing that the bankruptcy court employed an incorrect legal standard in ruling on the motion for contempt.

In the Order Denying Contempt, the bankruptcy court concluded that there was "no evidence to demonstrate that the Creditor willfully violated a direct order of the Court in retaining the funds." Order Denying Debtor's Motion for Contempt at 1, October 4, 2013. Debtor correctly asserts that the proper standard for contempt required him to demonstrate that Creditor "violated a specific and definite order of the court," but argues

-12-

that it was not the retention of the funds but rather the Creditor's original receipt of the funds in the first instance which constituted Creditor's contemptible act.

The bankruptcy court did not abuse its discretion in denying Debtor's motion for reconsideration. The court's statement in its order recited the proper standard for civil contempt, i.e., that the moving party must demonstrate that a violation of a definite, specific court order occurred. As explained above, however, the Total Avoidance Order simply did not address either the disbursement or retention of any sale proceeds for the Property. Therefore, especially given the other potential remedies available to Debtor to recover the payment to Creditor,[7] Debtor has not shown the Order Denying Contempt constitutes a manifest injustice sufficient to warrant reconsideration of the order denying Debtor's motion for contempt.

## CONCLUSION

We AFFIRM the orders of the bankruptcy court.

---

[7] Debtor's motions in the bankruptcy court sought an order holding Creditor in contempt; they did not seek to recover the sale proceeds paid to Creditor. We do not consider and express no opinion as to whether Debtor could obtain such relief in either the bankruptcy court or another forum.

-13-